*526]     *Benjamin Price and Sarah his wife *against* Robert Johnston.

### Same *against* Same.

The right of dower in the widow attaches immediately on the death of her husband, and she may be endowed temporarily, though there be a deficiency of personal estate to pay debts, and though upon a sale of part of the lands her dower will decrease in proportion.

APPEALS from the decision of the Circuit Court of Franklin county. The case was this :

Henry Pawling of the same county, died in February 1794, intestate and without issue, leaving a widow, who afterwards intermarried with Price the plaintiff ; and an only sister his heir at law who had been married to the defendant. He died seised of valuable lands, but much indebted.

By consent of the widow and Dr. Johnston, an amicable action was entered in the Court of Common Pleas, as of February term 1795, which was referred to three persons to report what sum of money should be annually paid in lieu and satisfaction of the widow's right of dower in the lands, and the time of the year when the same should be so paid. A report was made accordingly to March term 1795, fixing the sum of 150l. to be paid to the widow annually on the 25th day of December, the first payment to be made on the 25th December 1796, which was confirmed by the Court of Common Pleas.

The first annual payment was duly made, but was afterwards stopped, on notice given of debts due from the intestate. Actions were brought for the recovery of the sums due in 1797, 1798, 1799 and 1800, and two of the suits were removed into the Circuit Court.

In these two suits references were entered at a Circuit Court for Franklin county, in October 1801, to three men, or any two of them, who were to inquire what sum, if any, should be deducted from the annuity in each year to the plaintiffs, on account of lands sold and debts due from the estate of Henry Pawling, deceased.

On the 29th March 1802, the referees reported as follows : " We find there is no money due to the plaintiffs on the two " within suits, as the whole estate was totally consumed by the " payment of debts by the defendant, which were due from the " deceased at his death."

Exceptions were duly filed to the report, stating that the referees had erred in point of law, in making the widow of Henry

Pawling deceased, who had but a life estate in the moiety of his lands, contribute to the heir one half of the debts due by the same Henry, which his personal estate would not pay, out of the annuity awarded to the said widow in lieu of her dower in the one half of the lands of the said deceased.

*The report came on to argument before TILGHMAN Chief Justice, at a Circuit Court held in Franklin county [*527 in November 1805, when the same was set aside by him. The defendant appealed from his judgment, for the following reasons.

1st. For that the widow being the administratrix of Henry Pawling had the power of petitioning the Orphan's Court, and could have obtained a sale of the real estate for the payment of debts.

2d. A widow is not entitled, by the laws of Pennsylvania, to dower, until the debts are paid.

3d. Special provision is made by law, respecting as well descents as the rights of widows. No distribution can be made until the debts are fully discharged; and here one debt still remains due from the estate, which exceeds 2000l.

4th. The estate, which is the foundation of the widow's claim in these suits is subject to execution, and may by law be delivered to creditors, for the payment of their debts.

Mr. Dunlap for the defendant in support of the appeal. The intestate died previous to the act of 19th April 1794, (3 Dall. St. Laws 521,) and of course the provisions of the former existing laws must govern in this case. Ib. 533. sect. 25: The widow's claim to dower in this state differs from that in England; and must be decided by our own municipal laws.

It is a material circumstance in this case, that the widow of the intestate was his sole administratrix; and either under the 6th and 7th sections of the act of 1705, 1. Dall. St. Laws Append. 44, 45, or under the 19th and 20th sections of the act of 19th April 1794, 3 St. Laws 529, she might have obtained an order of the Orphan's Court for the sale of such part of the lands of her former husband, as would have enabled her to pay off his debts. But instead of so doing she has removed into Virginia with her second husband. The delay in payment of the debts is solely to be attributed to her own neglect; and if any injurious consequences arise therefrom, they are imputable to her own default for which she ought to suffer.

Under sect. 8, of the old act of 1705, the widow is only intitled to her share " of the surplusage or remaining part of the " intestate's lands, tenements and hereditaments, not sold or or- " dered to be sold by this act." The same provision is made by the 2d section, as to the surplusage of the personal estate; and such surplusage appears to be by the preceding section, " what remaineth clear, after all debts, funeral and just expences " of every sort are first allowed and deducted." And by sect. 3, to insure the interests of creditors, no distribution is to be

[Price and Wife *v.* Johnston.]

made of the goods of an intestate, till after one year be fully ex-
pired *after the intestate's death.     Hence it evidently
\*528]     results, that the widow is neither intitled to her distribu-
tive share of the personal property, nor endowable of the real
estate of her husband, until his debts and funeral expences are
discharged.

The lands of intestates are assets for the payment of their
debts, by our laws and customs.     They may be taken in execu-
tion and sold, though in the hands of a purchaser from the heir.
1 Dall. 484.

Mr. Brown, for the plaintiffs.     No censure can justly be at-
tached to the widow for not applying to the Orphan's Court for
an order to sell the intestate's lands for payment of debts.     The
plaintiffs will readily concur in such an application, if the heir
at law shall judge it to be advisable.     But how has she been in-
jured by the delay?     Her husband has received all the rents and
profits since the time of ascertaining the annuity; and if the
lands have risen in value, the enhanced sum they would bring,
redounds to his wife's benefit.

But the difficulty has arisen from hence, that it was judged
no sale could be ordered, there being no children of the intes-
tate.     The words of the acts of 1705 and 1794, are very strong
on this point, "and not otherwise."

YEATES J.     They certainly are strong; and yet it was deter-
mined in Franklin county, in a case wherein I was counsel, by
M'Kean, Chief Justice, on solemn argument, that the Orphan's
Court might make such order, though there were no minor chil-
dren.     The practice has since generally prevailed in the middle
counties of the state in particular; and many valuable titles de-
pend on that exercise of power.     I mentioned this in Philadel-
phia on the argument of Moliere's lessee v. Noe, in December
term 1806.     4 Dall. 451, note.     But I will not say, that all the
bar then present were satisfied with that construction of the law.

Mr. Brown, in continuation.     Be that as it may, the widow
here was not required on behalf of the heir at law, either before
her intermarriage with Price or since, to apply to the Orphans'
Court by petition, or it certainly would have been done.     If the
defendant desires it, the plaintiffs will petition the court imme-
diately on our return home.

What they now complain of, is that the referees in forming
their award, have charged them with the full moiety of the
debts, considering them as holding the lands in fee simple, when
they only hold it during the life of the widow.     In no instance
in England, has this been done.     In some cases, they have been
decreed to pay one-third; in others, two-fifths of a mortgage,
529\*]     *chargeable on lands devised to a tenant for life.     1 Equ.
Ca. Ab. 117.     Prec. Cha. 62.     A tenant for life shall bear
his proportion of a charge on the lands, that all shall not fall on

the remainder man.   1 Equ. Ab.  113, pl. 4.   But a remainder
man can only force the tenant for life to keep down the interest
of a mortgage.   2 Equ. Ab. 618, pl. 3.   A lease for lives being
devised in trust for A. remainder to B. in tail, A. not being one
of the lives, shall contribute one-third of the fine on renewal.
1 Vez. 428.   If a tenant for life pays off an .incumbrance on
the estate, he is a creditor to the amount of the money so paid ;
but it is otherwise of a tenant in tail, who may make himself
owner of the estate.   1 Bro. Cha. Rep. 206.   A tenant for life
by the late decisions, shall keep down the interest of an incum·
brance, but not pay any part of the principal.*   1 Ves. jr. 234.
2 Ves. jr. 652, 666.   4 Ves. jr. 24, 32.   6 Ves. jr. 107.

It has been  objected, that the widow is not entitled to dower
in this state, until the debts of her husband are paid.   This in
some instances, cannot be accomplished for many years.   Is the
heir at law to receive the rents and profits in the mean time, and
the widow to be in a state of starvation ?   On what is she to
subsist ?   The books say, she has nothing to live on but her
dower ; she is favoured both at law and in equity, and  gets her
share immediately ; she universally gets an account in chancery
from the death of her husband.   2 Bro. Cha. Rep. 630, 632.
It is so likewise in this government.   Her right of dower attaches
immediately on her husband's death.   So is the 3d section of
the act of 19th April 1794.   By section 4, where the intestate
leaves no lawful issue, she gets one-half of the real estate,
including the mansion house, where the estate can with pro-
priety be divided.   And by section 22, she may apply by peti-
tion to the Orphans' Court to have her dower assigned to her.

Mr. Watts  rose to argue the case further on  the part of the
plaintiffs ; but was stopped by the court, who expressed their
wish to hear what could  be further urged on the part of the
defendant.

Mr. Duncan, in support of the appeal, enlarged on the topics
which had been insisted upon before by his colleague ; and par-
ticularly, on the circumstance of the widow having neglected to
petition the Orphans' Court for an order impowering her to sell
the lands of the intestate for payment of his debts.   To her laches
*in this particular, he imputed all her difficulties, as she      [*530
could  not  be endowed until the debts were paid.   He
doubted  whether a widow  could  support an action of  dower at
common law, inasmuch as  her  claim to a portion of the  lands
must rest on this, that the lands might be divided without preju-
dice to the whole.

Under section 11, of the act of 1705, no partition of the lands
of the intestate shall be made, by or for his relict or younger

---

* In White *v.* White, 9 Ves. jr. 555, it was decreed by Lord Chancellor ELDON, that
though the  old rule, throwing one-third of  the  fine  upon renewal on the tenant for
life, does not now prevail, the tenant for life must in general cases, contribute beyond
the interest, in proportion to the benefit he takes.

[Price and Wife *v.* Johnston.]

children, if the heir at law will pay so much money as their respective purparts will amount to. 1 Dall. St. Laws, Append. 45. And by section 4, of the act of 23d March 1764, Ib. 47, partition cannot be made, unless it appears to the Orphans' Court, that the lands may be divided without prejudice to, or spoiling of the whole.

A case may be put wherein the widow's right of dower must necessarially be suspended. Suppose a judgment obtained against the administrator, for a debt due from the intestate, and the whole of his lands delivered over to the creditor under an extent, the widow can no longer be in the receipt of the rents and profits of her purpart. The fund out of which her yearly payments would arise, being removed from the heir at law, her annual sum would cease also. And this is a case, where though she is a mere tenant for life, she would be obliged to pay her full proportion of the debt upon the land, before her right of dower could be revived.

YEATES, J. What could be done for a widow, in case all her husband's lands were extended for his debts, is not now before us. When such a case does occur, the court will deliberate fully before they act.

Before we can confirm this report of the referees, the proposition must be established, that the heir of an intestate may take the rents and profits of valuable lands, and not contribute one single cent towards the support of his widow. The defendant here has enjoyed the real estate of Henry Pawling, above 12 years, and yet has made but one single payment of 15ol. to his widow. While he holds the lands for his own benefit, no ground can be assigned why the widow's annuity should remain unpaid. The debts due from the intestate are chargeable on his lands, on a deficiency of personal assets; but until the creditors have proceeded to a sale, the right of the widow to the profits of her share, stands on the same footing as the right of the heir to his share. If the heir has paid any of those debts, she comes in as a creditor *pro tanto*.

It is true, the widow's ultimate right of dower must depend on the state of her husband's lands after payment of his debts; but it is not true, that she cannot receive a temporary share until *that object is accomplished. She cannot compel the creditors to commence suits; and without funds she cannot discharge the debts. Her not applying to the Orphan's Court in this instance for an order to sell the lands has been accounted for. But independently thereof, it does not appear that the heir has received any injury thereby, while he has had the undisturbed possession of the whole estate, and that too daily rising in value. When any part of the lands is sold by legal process, the share of the widow must proportionably decrease; but as between her and the heir, she was intitled to one moiety of all the lands until such sale. It may be another ques-

[Holmes and Harriot *v.* Keitlinger et al.]

tion, which however cannot take place here, whether if upon the sale of all the lands, there should be a deficiency of assets, both the heir and widow might not eventually be responsible to creditors.   So far from the widow's claim of dower being discouraged by our laws, she derives an interest from the valuation of mere woodland in a state of nature, where the same cannot be divided with propriety.

The erroneous principle upon which the referees have proceeded, will be readily perceived by considering the plaintiff's demand to the annuity of 150l.   That sum was fixed on by the first award in lieu of the widow's right of dower, and is the interest arising out of a principal of 2500l. for one year.   It follows of course, that the first set of referees must have valued all the lands of Pawling, at 5000l. or as productive of 300l. annually in net profits.   Now if those lands are resorted to, by a creditor for the payment of a debt of 2000l. due from the intestate, or if any one on behalf of the heir at law, should pay that sum and look to the lands for remuneration, the consequence as to the widow must be, that the principal out of which her annuity would thereafter accrue, would be decreased from 2500l. to 1500l., and her annuity would in future be 90l. and not 150l.   This reduces the matter to a mathematical certainty; but by the account of the referees, which accompanied their report, they assume the principle that in the case already put, the widow would be chargable with the payment of 1000l. viz. the one full half of the whole debt, which is most palpably unjust.   I have therefore no hesitation in saying, that the report was set aside on the most just grounds.

SMITH, J. concurred. ·

BRACKENRIDGE, J.   I had conceived during the argument, that the widow was highly blameable in not petitioning the Orphan's Court for an order to sell the intestate's lands.   I do not know enough of the case, to enable me to form a decisive opinion on it.

Judgment of the Circuit Court affirmed.

Cited and followed in 1 Pa. 339.